UNITED STATES of America

v.

**Mary Sue HUBBARD et al.**

**Crim. No. 78–0401.**

United States District Court, District of Columbia.

June 1, 1979.

Motion to Require Government to Elect Aug. 23, 1979.

92

Earl J. Silbert, U. S. Atty., Raymond Banoun, Judith Hetherton, Timothy J. Reardon, III, Steven C. Tabackman, Asst. U. S. Attys., Washington, D. C., for the United States.

Leonard B. Boudin, Rabinowitz, Boudin & Standard, Michael Lee Hertzberg, New York City, for defendant Hubbard.

Philip J. Hirschkop, John D. Grad, Leonard S. Rubenstein, Hirschkop & Grad, P. C., Alexandria, Va., for defendants Heldt and Snider.

Roger Zuckerman, Roger Spaeder, Lawrence A. Katz, Richard A. Stanley, Wendy Manz, Zuckerman, Spaeder & Taylor, Washington, D. C., for defendants Willardson and Weigand.

Michael Nussbaum, James Davenport, Ronald G. Precup, Nussbaum & Owen, Washington, D. C., for defendants Hermann and Raymond.

John Kenneth Zwerling, Jonathan Shapiro, Zwerling & Shapiro, Alexandria, Va., for defendant Wolfe.

Leonard Koenick, Washington, D. C., for defendant Thomas.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

On April 25, 1979, this Court issued an opinion resolving numerous pretrial motions and providing some background to this case in which eleven defendants are named in an indictment charging two conspiracies, obstruction of justice, illegal electronic eavesdropping, several burglaries, and thefts of government documents, and false declarations before a grand jury. *United States v. Hubbard*, 474 F.Supp. 64 (D.D.C. 1979). At this time, the Court will rule on a series of motions filed by the defendant Gerald Bennett Wolfe.

### I. BACKGROUND.

In the current indictment, Wolfe is named in seventeen counts. In Counts Three through Eight, Wolfe and others are charged with burglarizing the offices of various federal officials. In Counts Nine through Thirteen, Wolfe and others are charged with stealing government documents from these offices. In Count Twenty-three, Wolfe and others are charged with conspiring to obstruct justice. In Count Twenty-four, Wolfe and others are charged with obstructing the due administration of justice. In Counts Twenty-five through Twenty-eight, Wolfe alone is charged with knowingly making false material declarations to the Grand Jury investigating the charges brought in this indictment.

At this time, the Court will resolve four motions filed by Wolfe: (1) motion to dismiss all counts; (2) motion to dismiss pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), for

wrongful use of his immunized Grand Jury testimony; (3) motion to dismiss Count Twenty-four of the indictment, or, in the alternative, to compel an election between Count Twenty-four and the perjury allegation; and (4) motion to quash because of abusive questioning before the grand jury and because of taint arising from the improper use of his grand jury testimony.

## II. WOLFE'S MOTION TO DISMISS ALL COUNTS IS WITHOUT MERIT.

Wolfe has moved to dismiss all counts of the indictment in which he is named on the grounds that (1) the charges violate his plea agreement with the government; (2) the government has violated his fifth amendment rights; (3) the government has equitably immunized him from prosecution; (4) the government has entrapped him into giving false testimony before the Grand Jury; and (5) the government has improperly subjected him to multiple prosecution and punishment.

### A. The Indictment Does Not Violate the Plea Agreement.

On June 30, 1976, the defendant Wolfe was arrested and charged with violating section 499 of Title 18 of the U.S.C. for using a falsely made identification card to enter the United States Courthouse in Washington, D. C. The government offered to settle the matter if Wolfe would plead to a misdemeanor and cooperate with the government's continuing investigation. Rather than cooperate, Wolfe rejected the offer and pleaded guilty to a felony—the misuse of a government seal in violation of section 1017 of Title 18 U.S.C. In exchange for his plea to the felony, the government "agreed not to charge Mr. Wolf [*sic*] with any other possible violations arising out of three separate entries into this courthouse with another man in May and June of last year using a false and fraudulently obtained Internal Revenue I.D. card." Plea Transcript at 2; *see id.* at 12.

█ The defendant contends that Counts Three through Thirteen and Twenty-three and Twenty-four of the current indictment violate his plea agreement. Count Three charges Wolfe and others with violations of the District of Columbia burglary statute, 22 D.C.Code § 1801(b), in the office of the Internal Revenue Service (hereinafter, "IRS") Exempt Organization Division in January of 1976. Count Nine charges Wolfe and others with the theft of federal property in violation of 18 U.S.C. § 641 in the same office as Count Three in June of 1975. Counts Four and Ten charge Wolfe and others with burglary of and theft from the office of the IRS Exempt Organization Division in March of 1976. Counts Five and Eleven charge Wolfe and others with burglary of and theft from another office of the IRS Exempt Organization Division later in March of 1976. Count Six charges Wolfe and others with the burglary of the IRS Identification Room in March of 1976. Counts Seven and Twelve charge Wolfe and others with burglary of and theft from the Office of the Associate Deputy Attorney General of the United States Department of Justice in April of 1976. Counts Eight and Thirteen charge Wolfe and others with the burglary of and theft from the IRS Office of International Operations in April of 1976. Count Twenty-three charges Wolfe and others with entering into a conspiracy to obstruct the investigation of the burglaries and thefts. County Twenty-four charges Wolfe and others with obstructing justice in violation of section 1503 of Title 18.

Each of these charges concerns offenses which did not occur in the courthouse, did not occur in the months of May or June of 1976, and are completely distinct from the offenses encompassed in the agreement entered into between the government and the defendant. The defendant's contention that there was a mutual understanding that he would be immune from further prosecution for all such offenses is not supported by the record. Before Judge Flannery the defendant indicated that the only promises made to induce his plea were immunity for the three courthouse incidents in May or June of 1976. Plea Transcript at 12. Ac-

cordingly, the present indictment does not violate the agreement between the government and Wolfe.

## B. The Indictment Should Not Be Dismissed For Fifth Amendment Violations.

■ Wolfe's second contention in support of his motion to dismiss all counts of the indictment is that the government violated his fifth amendment rights before the Grand Jury. In support of this contention, the defendant relies heavily on a remark of the Assistant United States Attorney which is significant only when quoted out of context. However, in the context in which the statement was made, it is clear that the assistant was simply telling the defendant that he no longer had a fifth amendment right with respect to the three incidents involved in the plea agreement. Before the Grand Jury Wolfe was told that: "You are here to give your truthful responses to our questions involving a matter that this grand jury is investigating. And as a citizen of the United States and having entered your plea of guilty to one of these instances and having the government bargain away in the plea agreement, it's [sic] right to charge you with everything it could charge you with as far [sic] those instances are concerned. You no longer have a Fifth Amendment privilege; do you understand that?" Grand Jury Transcript at 17.[1]

Throughout his appearance before the Grand Jury, Wolfe had ready access to his attorney who was immediately outside the room in which his testimony was being taken. He was warned that he could be charged with perjury if he answered falsely. Grand Jury Transcript at 10–11. He was instructed that if he had any questions concerning his rights he could consult with his attorney. Grand Jury Transcript at 13. In fact, at one point, Wolfe halted the proceedings to confer with his counsel and returned and proceeded to answer a question. Grand Jury Transcript at 220–21. At no time did Wolfe invoke the fifth amendment and refuse to answer a question during his appearance before the first Grand Jury.[2] Accordingly, the Court finds that, based on the totality of the circumstances, the will of the defendant was not overborne and his testimony was voluntary and was not obtained in violation of his fifth amendment rights. *See United States v. Mandujano,* 425 U.S. 564, 574–75, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976).

■ Furthermore, the defendant's attempt to suppress his allegedly false testimony before the Grand Jury is misguided. Even if his testimony was compelled in violation of the fifth amendment, which it was not, suppression would not be available. According to the Supreme Court, *"Under no circumstances, however, could he commit perjury and successfully claim that the Constitution afforded him protection from prosecution from that crime." United States v. Mandujano, supra* at 570, 96 S.Ct. at 1772 *quoting United States v. Orta,* 253 F.2d 312, 314 (5th Cir.) *cert. denied,* 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed.2d 1156 (1958) (emphasis added by the Supreme Court). As the Court has pointed out, "Our Legal system provides methods for challenging the Government's right to ask questions—lying is not one of them." *Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969). Accordingly, the Court finds that the fifth amendment rights of the defendant were not violated before the Grand Jury, and no testimony will be suppressed.

1. The government contends that the punctuation of the final two sentences is incorrect. According to the government, there should not be a period between "concerned" and "You." However, the government's interpretation of the remark stands up without any alteration in the punctuation.

2. The Grand Jury which indicted Wolfe was not the Grand Jury he testified before. The first Grand Jury's term ran out prior to returning an indictment. The second Grand Jury was read the testimony of Wolfe before the first Grand Jury. Wolfe was called before the second Grand Jury and declined to answer any questions. His refusal to testify before the second Grand Jury was acquiesced to by the government.

**C. The Defendant Was Not Equitably Immunized From Further Prosecution.**

■ Wolfe contends that the government should be compelled to abide by its misrepresentations before the Grand Jury. Thus, according to Wolfe, he should be equitably immunized from further prosecution. The Court finds that the government did not misrepresent the facts before the Grand Jury. *See* page 94, *supra.* Without misrepresentation, the defendant's claim of immunity fails. Accordingly, the Court finds that Wolfe was not equitably immunized from further prosecution.

**D. The Defendant Wolfe Was Not Entrapped Into Lying Before the Grand Jury.**

■ Wolfe contends that the perjury counts of the indictment must be dismissed because he was entrapped into lying to the grand jury. In order to meet the evidentiary threshold to merely obtain an entrapment instruction in the District of Columbia, there must be a foundation in the evidence in the light viewed most favorably to the accused, for a finding of inducement by a government agent, that is persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, pleas based on need, sympathy, or friendship, and any other government conduct which would create the risk of causing an otherwise unpredisposed person to commit the crime charged. *United States v. Burkley,* 192 U.S.App.D.C. 294, 305, 591 F.2d 903, 914 (1978). Neither the defendant nor the government has proffered any evidence which would show that any government agent in any way even suggested in the slightest that Wolfe not tell the truth before the Grand Jury. On the contrary, he was continuously reminded that he should tell the truth and that any false statements he made would make him subject to criminal penalties. Grand Jury Tr. at 10–11. Therefore, Wolfe fails to make out a claim of entrapment under the law as it now stands.

■ According to Wolfe, the only reason for calling him before the Grand Jury was to lay the foundation for a perjury prosecution. He contends, therefore, that his testimony was outside the scope of the Grand Jury's authority. In support of this contention, the defendant relies on a series of cases, the most recent of which was decided over fifteen years ago. *United States v. Cross,* 170 F.Supp. 303 (D.D.C.1959); *United States v. Thayer,* 214 F.Supp. 929 (D.Colo. 1963); *United States v. Icardi,* 140 F.Supp. 383 (D.D.C.1956); *Brown v. United States,* 245 F.2d 549 (8th Cir. 1957).

In *United States v. Icardi, supra,* the defendant was charged with perjury before a special subcommittee of the Congressional Committee on Armed Services. *Id.* at 385. The subcommittee was investigating the disappearance and death of an American major in Italy during the Second World War. Icardi had been implicated, but there was no jurisdiction to punish him since he had severed his relationship with the service. *Id.* at 387. The Chairman of the subcommittee admitted that Icardi was called only to tell his side of the story or to enable a perjury prosecution because the subcommittee already had in its possession sufficient information on which to base its report to Congress. *Id.* at 388. The Court with Judge Keech sitting held that providing a forum in which to allow an accused to protest his innocence or to lay the foundation of a perjury prosecution are not valid legislative purposes. *Id.* Furthermore, the Court held that even if there were a valid legislative purpose, the questions were not material to the subcommittee's investigation. *Id.* at 389. According to the Court in *Icardi,* at the time the defendant was questioned, which was after the committee admittedly had all the information that was necessary to fulfill its function, the alleged perjurious answers were not material to the subcommittee's authorized investigation. *Id.*

In *United States v. Cross,* 170 F.Supp. 303 (D.D.C.1959), the defendant was being prosecuted for perjury before the Senate Select Committee on Improper Activities in the Labor or Management Field. *Id.* at 304. In this case, the defendant had been re-

called to testify before the committee a second time for the sole purpose of strengthening the case against him for perjury. *Id.* at 309. Judge Keech again held that the committee was not a competent tribunal and the statements were immaterial because the questions were not asked for the purpose of eliciting facts material to the committee's investigation. *Id.* at 310.

In both *Icardi* and *Cross,* it is important to note that the tribunals were legislative, raising the spectre of what Judge Keech referred to in *Icardi* as "legislative trial and conviction." *Id.* at 388, which "should not be condoned, as it denies to the accused the constitutional safeguards of judicial trial." *Id.* at 389.

In *Brown v. United States,* 245 F.2d 549 (8th Cir. 1957), the defendant was charged with perjury before a grand jury in Nebraska. The court ruled that the grand jury, by asking the defendant questions concerning events in Missouri, exceeded its authority. *Id.* at 555. Therefore, the only possible purpose for the grand jury to inquire into those matters was to enable the defendant to be prosecuted for perjury. *Id.* The Court followed *Icardi* and overturned the conviction and held that the allegedly false answers were not material to the grand jury's investigation.

In *United States v. Thayer,* 214 F.Supp. 929 (D.Colo.1963), the court ordered a new trial for the defendant who was convicted of perjury before the United States Securities and Exchange Commission. The Court ruled that it was unfair to the defendant to recall him with a perjury prosecution in mind without informing him of their intentions. *Id.* at 932–33.

The Court finds these cases to be distinguishable from the case *sub judice,* even if they still constitute good law.[3] First, the Grand Jury was plainly investigating crimes within its jurisdiction, therefore this case is unlike *Brown.* Second, this case involves a grand jury and does not involve

the problem of legislative or administrative trials as do *Icardi, Cross,* and *Thayer.* Third, the defendant in this case had not previously given his testimony under oath when he was called before the Grand Jury as had the defendants in *Thayer* and *Cross* ; therefore, in this case, even if the prosecutor believed he was previously lying, he could hope that the defendant would tell a more truthful story once under oath. Unlike *Brown, Icardi* and *Cross,* the questions directed to Wolfe were material to the matters being investigated; there was no hint that the investigation had already been completed as in *Icardi* and *Cross,* or that the questions concerned matters outside the grand jury's authority as in *Brown.* Finally, unlike *Thayer,* the defendant in this case was repeatedly warned that he could be prosecuted for perjury if he made false statements; thus, he was not misled in this regard. Grand Jury Transcript at 10–11. Accordingly, the Court finds that the defendant Wolfe was not entrapped into lying to the grand jury.

*E. The Government Has Not Subjected Wolfe to Improper Multiple Prosecution and Punishment.*

 Wolfe contends that he has been the victim of multiple prosecution and punishment in violation of the double jeopardy clause of the fifth amendment. According to the defendant, the charges in the present indictment arise from the same series of acts or transactions as those charged in the earlier case against Wolfe, and therefore the current indictment is improper. In *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Supreme Court pointed out that the established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is whether each crime requires proof of a fact which the other does not. *Id.* at 166, 97 S.Ct. 2221. Plainly, under this test the offenses involved in the plea agreement would be

---

**3.** Compare the treatment of the Fifth Circuit's decision in *United States v. Orta,* 253 F.2d 312 (5th Cir.), *cert. denied,* 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed.2d 1156 (1958), in *United States v.*

*Mandujano,* 425 U.S. 564, 570, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) with its treatment in *United States v. Thayer,* 214 F.Supp. 929, 932–33 (D.Colo.1963).

separate from those in the current indictment. *See* pages 93–94, *supra*. Accordingly, the Court finds that the present indictment does not violate the double jeopardy clause.

## III. THE USE OF THE DEFENDANT WOLFE'S TESTIMONY DOES NOT VIOLATE *KASTIGAR V. UNITED STATES*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

■ Wolfe has moved to dismiss the case against him on the ground that his compelled testimony before the Grand Jury will lead to the infliction of criminal penalties in violation of *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Since the Court has found that his testimony before the Grand Jury was not compelled, *see* page 94, *supra*, the basis for this motion has been undermined. Accordingly, the motion of the defendant to dismiss pursuant to *Kastigar* is denied because there is no compelled immunized testimony involved in this case.

## IV. THE FALSE DECLARATIONS AND OBSTRUCTION OF JUSTICE CHARGES AGAINST THE DEFENDANT WOLFE ARE SUFFICIENT TO WITHSTAND THE MOTION TO DISMISS.

Wolfe has moved to dismiss Count Twenty-four of the indictment which charges him with obstruction of justice in violation of 18 U.S.C. § 1503. In the alternative, Wolfe contends that the government must be compelled to elect between Count Twenty-four and the false declarations allegations which make up Count Twenty-five through Twenty-eight.

According to Wolfe, Count Twenty-four is defective because it merely charges the defendant with false declarations and fails to charge the defendant with the additional element of "obstruction to the court in the performance of its duty." *Citing Ex parte Hudgings*, 249 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656 (1919). The Court has already ruled with respect to this issue with

regard to the other defendants. *See United States v. Hubbard*, 474 F.Supp. 64, 75–77 (D.D.C. 1979). The exact same analysis resolves this motion for Wolfe. Accordingly, Count Twenty-four will not be dismissed.

■ In the alternative, Wolfe contends that the government should be compelled to elect between Count Twenty-four and the false declarations counts. According to Wolfe, the charge of false declarations is a lesser-included offense of the obstruction of justice charge, and it would be inherently unfair to force the defendant to proceed to trial on multiple counts. The Court is not persuaded by this argument. Requiring defendants to stand trial on an offense as well as lesser-included offenses is standard practice and has been upheld by every court that has faced the issue. *Albrecht v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 71 L.Ed. 505 (1927); *United States v. Partin*, 552 F.2d 621, 631 (5th Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); *Catrino v. United States*, 176 F.2d 884, 886–87 (9th Cir. 1949); *United States v. Walasek*, 527 F.2d 676, 680 (3d Cir. 1975). Accordingly, the Court will deny Wolfe's motion to compel the election.

## V. THE DEFENDANT WOLFE WAS NOT ABUSED BEFORE THE GRAND JURY.

Wolfe has moved to quash the indictment against him because of abusive questioning before the Grand Jury. The Court has examined the transcript of the Grand Jury proceedings and finds that the Assistant United States Attorneys' conduct was within the allowable limits. Therefore, the motion to quash will be denied.

## ORDER

In accordance with the Memorandum Opinion issued of even date herewith, it is, by the Court, this 31 day of May, 1979,

ORDERED, that the motion of the defendant Wolfe to dismiss all counts be, and the same hereby is, denied; and it is

FURTHER ORDERED, that the motion of the defendant Wolfe to dismiss pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), for wrongful use of his immunized Grand Jury testimony be, and the same hereby is, denied; and it is

FURTHER ORDERED, that the motion of the defendant Wolfe to dismiss Count Twenty-four of the indictment or, in the alternative, to compel an election between Count Twenty-four and the perjury allegation be, and the same hereby is, denied; and it is

FURTHER ORDERED, that the motion of the defendant Wolfe to quash because of alleged abusive questioning before the grand jury, and because of alleged taint arising from the improper use of his grand jury testimony, be, and the same hereby is, denied; and it is

FURTHER ORDERED, that the motion of the government to dismiss Count Six as to the defendant Wolfe be, and the same hereby is, granted.

## MOTION TO REQUIRE GOVERNMENT TO ELECT

 The defendant Wolfe has moved the Court for an order requiring the government to proceed on only one of the perjury counts charged in Counts twenty-five (25), twenty-six (26), twenty-seven (27) and twenty-eight (28). According to the defendant, it is the government's theory that each alleged untruth to the Grand Jury was part of a single plan by the defendant, and his alleged co-conspirators, to cover up certain prior activities by the defendants. Count twenty-five (25) charges that Wolfe lied when he stated that his purpose in going to the D.C. Bar Association Library was to learn to do legal research. Count twenty-six (26) charges that he lied when he stated that he went nowhere else on his first visit to the library than to the library and the men's room. Count twenty-seven (27) charges that he lied when he stated that he and Foster carried case histories to the xerox machine and copied them while at the courthouse. Count 28 charges that he lied when he stated that he knew his companion at the D.C. Bar Association Library only as John Foster. The defendants charge that the government has taken the single story testified to by Wolfe, extracted at random four statements, and seeks to impose criminal liability for each.

The test approved by several circuits to determine the number of perjury charges permissible in a single story is: "If [the defendant] in fact told separate lies, each of which could have hindered the Grand Jury in its investigation, then he could properly be separately charged for each lie." *Gebhard v. United States,* 422 F.2d 281, 289 (9th Cir. 1970); *see United States v. Williams,* 552 F.2d 226, 228 (8th Cir. 1977); *United States v. Doulin,* 538 F.2d 466, 471 (2d Cir.) *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976); *United States v. Lazaros,* 480 F.2d 174, 179 (6th Cir. 1973); *United States v. Tyrone,* 451 F.2d 16, 18 (9th Cir. 1971); *United States v. Andrews,* 370 F.Supp. 365, 369 (D.Conn.1974).

The defendant Wolfe's purpose in going to the D.C. Bar Association Library, his movements within the building that night, what was photocopied, and how that photocopying was carried out on the three occasions he was allegedly in the U.S. Courthouse, and the identity of his accomplice were each non-redundant relevant areas of inquiry. Proof of the falsity of each statement will require the government to prove distinct facts. Plainly, this is not a case of consistent responses to repeated or rephrased questions. *Compare Masinia v. United States,* 296 F.2d 871 (8th Cir. 1961) *with United States v. Doulin,* 538 F.2d at 471. The Court finds that each perjury count alleges a separate lie which could have hindered the Grand Jury in its investigation.

The defendants contend that such a result is simply unjust. However, the Court disagrees. There is a material difference between fabricating a scenario to cover one's tracks at every point, and lying on one fact to mislead a Grand Jury on a single aspect. For example, the possible penalty for protecting the identity of an accomplice

versus manufacturing an entire story to protect a web of actions, motivations, and conspirators, should not necessarily be the same. The phrase "declaration" in the perjury statute, 18 U.S.C. § 1623, plainly must be read to require such a result.

Accordingly, the motion of the defendant Wolfe to require the government to elect between the four perjury counts is hereby denied.